**UNITED STATES of America,
Plaintiff-Appellee,**

**and**

**Marvin C. Schwartz, Intervenor-Appellee,**

**v.**

**Clyde L. KUEHN, State's Attorney in and of St. Clair County, Illinois, Successor to Robert H. Rice, Defendant-Appellant.**

**No. 77–1128.**

United States Court of Appeals,
Seventh Circuit.

Argued April 29, 1977.

Decided Sept. 19, 1977.

Rehearing and Rehearing En Banc
Denied Nov. 7, 1977.

Carmen S. Durso, Asst. State's Atty., St. Clair County, Belleville, Ill., for defendant-appellant.

Frederick J. Hess, U. S. Atty., Clifford J. Proud, Asst. U. S. Atty., East St. Louis, Ill., William J. Billeaud, Edwardsville, Ill., for plaintiff-appellee.

Before CASTLE, Senior Judge, and SWYGERT and SPRECHER, Circuit Judges.

SWYGERT, Circuit Judge.

This case involves the effect of an order granting immunity under the provisions of 18 U.S.C. § 6002. Specifically, the question is whether the state prosecution of a witness on charges which relate to his immunized federal grand jury testimony may be enjoined by the United States Attorney on behalf of the United States.

On June 17, 1976 the St. Clair County grand jury returned an indictment against Marvin C. Schwartz charging him with attempting to bribe John J. Hoban, a judge of the Circuit Court of St. Clair County, by tendering $1000 through Albert Rolek "with the intent to influence the said judge in acquitting the defendant on forgery charges." After he had been indicted Schwartz filed a motion in state court to dismiss the indictment based upon the immunity granted him under 18 U.S.C. § 6002. The state court judge denied the motion ruling that:

> In the case herein the defendant provided information to the news media which was published by the media. This publication was after the grant of immu-

nity to defendant, but prior to the indictment herein and prior to the prosecutor's reading of the defendant's testimony before the grand jury. It seems incongruous that the defendant should be allowed to use the immunity grant as a bar to prosecution after publishing the factual background by relating substantially the same facts to one known to defendant to be a reporter for a local newspaper.

On September 24, 1976 the United States Attorney for the Eastern District of Illinois filed the instant action in the federal district court against the State's Attorney of St. Clair County, Robert H. Rice. The complaint asked for a temporary restraining order and a permanent injunction against the prosecution of Schwartz.[1] The temporary restraining order was granted and Schwartz was permitted to intervene as a plaintiff. A hearing followed on the request for an injunction. On October 16, 1976 the district court granted a permanent injunction. This appeal followed. We reverse.

We now relate the background events that led to the filing of this injunction action. Schwartz was subpoenaed to testify before the federal grand jury of the Eastern District of Illinois. The district judge, upon the recommendation of the United States Attorney, granted Schwartz immunity under 18 U.S.C. § 6002.[2] Pursuant to the order Schwartz appeared before the grand jury on October 22 and 24, 1974. His testimony included an admission that he had offered Judge Hoban $1000 through Rolek to have a pending criminal case against him dismissed.

---

1. Clyde L. Kuehn, the present State's Attorney of St. Clair County, has been substituted as defendant-appellee.

2. 18 U.S.C. § 6002 reads in relevant part:

Whenever a witness refuses, on the basis of his privilege against self-incrimination, to testify or provide other information in a proceeding before or ancillary to—
 (1) a court of grand jury of the United States,
 (2) an agency of the United States, or
 (3) either House of Congress, a joint committee of the two Houses, or a committee or a subcommittee of either House,

and the person presiding over the proceeding communicates to the witness an order issued under this part, the witness may not refuse to comply with the order on the basis of his privilege against self-incrimination; but no testimony or other information compelled under the order (or any information directly or indirectly derived from such testimony or other information) may be used against the witness in any criminal case, except a prosecution for perjury, giving a false statement, or otherwise failing to comply with the order.

Subsequent to his federal grand jury appearance Schwartz testified in several federal court criminal trials resulting from his previous grand jury testimony. During the course of these trials transcripts of his testimony before the grand jury were circulated to defense counsel in those cases as discovery material. One of the federal cases at which Schwartz testified was the criminal prosecution of Rice, the State's Attorney. After Rice had been indicted on March 3, 1976 he was furnished a copy of Schwartz' federal grand jury testimony. He testified at the injunction hearing that he thereafter read it, but that it was not used in any manner in bringing about the subsequent prosecution of Schwartz. He testified that his investigation of the alleged bribery had preceded Schwartz' federal grand jury appearance and that the state grand jury proceeding that led to Schwartz' indictment had commenced prior to his own criminal trial in federal court.

The transcript of the state grand jury proceeding shows that Schwartz' federal grand jury testimony was not introduced or in any manner referred to. The only testimony that was presented was that given by Rolek and Spohn.

At the hearing in federal court on the instant action a newspaper article written by Larry Spohn, a reporter for the Metro-Journal, was introduced into evidence. The article, published on January 26, 1975, quoted Schwartz as saying that he gave Rolek $1000 to transfer to Judge Hoban to "fix" his case. The hearing brought to light another instance in which Schwartz related the same story he had told the federal grand jury. Howard Krass, a former employee of Schwartz, was charged with perjury in a state prosecution. Schwartz, as a defense witness, testified about the very same attempt to bribe Judge Hoban that he had previously testified to before the federal grand jury.

We are convinced that the injunction order issued by the district court cannot be affirmed for a variety of reasons. We believe first, that fatal jurisdictional defects exist; second, that collateral estoppel and federalism, singly or in combination, bar the present action; and, third, that Schwartz created incriminating evidence, independent of his grand jury testimony, rendering the district court's finding that there was no independent source for the state's prosecution clearly erroneous.

## I

The Government asserts that the district court had original jurisdiction to entertain the petition for an injunction. It cites section 1345 of the Judicial Code, 28 U.S.C. § 1345, which provides generally that the district courts shall have original jurisdiction of all civil actions commenced by the United States. The Government additionally cites section 2283 of the Code, 28 U.S.C. § 2283, which provides that a federal court may not grant an injunction to stay a state court proceeding except "as expressly authorized by Act of Congress, or where necessary in aid of its jurisdiction, or to protect or effectuate its judgments." On the basis of these two statutes the United States Attorney contends that the district court can exercise jurisdiction in effectuating its own judgment in a situation where there has been a federal grant of immunity and a state prosecution interferes with that immunity. There is a major flaw in this argument: the Government has no standing to protect the grant of immunity. Once the witness has testified, the Government received all that it asked for—the compelled testimony.

 The Fifth and Fourteenth Amendments guarantee against infringement by either the federal or state governments "the right of a person to remain silent unless he chooses to speak in the unfettered exercise of his own will, and to suffer no penalty . . . for such silence." *Malloy v. Hogan,* 378 U.S. 1, 8, 84 S.Ct. 1489, 1496, 12 L.Ed.2d 653 (1964). The privilege against self-incrimination is personal; it may not be asserted to protect another. Moreover, this privilege may be waived by the person reciting the incriminating facts. Similarly, if the privilege is claimed and immunity granted, the immunity is personal

and can only be asserted by the person to whom it is granted.

■ The United States Attorney's argument is over-simplified. There is no doubt that the district court has original jurisdiction under section 1345 when the United States is the plaintiff in an action or that section 2283 permits the enjoining of state court proceedings so as to enable a federal court to effectuate its judgments. But these statutes do not furnish the complete answer to the jurisdictional problem. To initiate an action permitted under section 2283, the Government must have a judgment in its favor for the court to effectuate, that is, the United States must have a substantive claim to assert in the district court. Here it has none. As we have demonstrated, the grant of immunity flows to the witness and not to the Government. Only the witness may claim its benefits.

■ The United States Attorney argues that the action was brought in order to give the district court an opportunity to effectuate its own judgment. But the court is not a party to the action. It stands neutral and may exercise its authority to effectuate its judgments by an injunction only at the behest of a party who has an interest in the judgment and standing to request an injunction.

Schwartz' claim by way of intervention must also fail, but for different reasons. Although the intervenor contends in his brief and at oral argument that the injunction should be sustained under theories developed in *Dombrowski v. Pfister*, 380 U.S. 479, 85 S.Ct. 1116, 14 L.Ed.2d 22 (1965), he made no allegations in his complaint that are kindred to those enumerated in *Dombrowski*. After stating that his claim for injunctive relief arises under the provisions of 42 U.S.C. § 1983, he simply adopts by reference all of the allegations of the complaint filed by the United States Attorney. Moreover, the district court did not treat the intervenor's claim separately nor did it make any findings that could be interpreted as coming within the ambit of *Dombrowski*.

■ As Mr. Justice Black made clear in *Younger v. Harris*, 401 U.S. 37, 91 S.Ct. 746, 27 L.Ed.2d 669 (1971), to be entitled to an injunction against his state court prosecution, a defendant must show that he will suffer irreparable damages and that he has no adequate remedy at law. Justice Black continued:

In addition, however, the Court also made clear that in view of the fundamental policy against federal interference with state criminal prosecutions, even irreparable injury is insufficient unless it is "both great and immediate." Certain types of injury, in particular, the cost, anxiety, and inconvenience of having to defend against a single criminal prosecution, could not by themselves be considered "irreparable" in the special legal sense of that term. Instead, the threat to the plaintiff's federally protected rights must be one that cannot be eliminated by his defense against a single criminal prosecution. (Citations omitted.) 401 U.S. at 46, 91 S.Ct. at 751.

■ In *Dombrowski*, as the *Younger* Court pointed out, special circumstances of prosecutorial harassment and bad faith established the kind of irreparable injury to the exercise of First Amendment rights that authorized federal injunctive relief. Here there was no evidence presented which could be characterized as irreparable injury, bad faith, or harassment. *Dombrowski* simply does not apply even though the intervenor's claim is asserted under the provisions of section 1983 of the Civil Rights Act. As Mr. Justice Stewart carefully explained in *Mitchum v. Foster*, 407 U.S. 225, 92 S.Ct. 2151, 32 L.Ed.2d 705 (1972), *Younger* was a section 1983 action in which injunctive relief from a state criminal prosecution was rejected, not because of the anti-injunction statute, but upon what the Court called "our Federalism"—upon "the national policy forbidding federal courts to stay or enjoin pending state court proceedings except under special circumstances." 401 U.S. at 41, 91 S.Ct. at 749.

Given the state court's decision on Schwartz' motion to dismiss, we have further assurance that this prosecution was not

brought in bad faith or merely for harassment. That court found valid bases for the prosecution, independent of the immunized testimony. Such a decision dispels any notion that the prosecution is being brought without a proper foundation. Thus, since there were no special circumstances of the *Dombrowski* type, the intervenor's claim should have been denied as a matter of law.

## II

 The foregoing discussion leads us to decide the effect of the state court denial of Schwartz' motion to dismiss his state court indictment. He alleged that the use of his federal grand jury testimony or the fruits thereof barred his prosecution and entitled him to a dismissal of his indictment. The state court found that the prosecutor had relied on independent sources for the evidence which he presented to the state grand jury, and that under *Kastigar v. United States,* 406 U.S. 441, 92 S.Ct. 1653, 32 L.Ed.2d 212 (1971), Schwartz could not invoke his immunity to bar this prosecution. Under this set of facts the doctrine of collateral estoppel comes into play. It was Schwartz himself who sought the protection against the prosecution in the state court. He was rebuffed and now seeks a "second bite at the apple." But he has had his claim decided in the state court and is not entitled to a second hearing of the identical issue in the federal court. His right of review from the adverse ruling by the state court lies in the appellate procedure, including seeking review by the Supreme Court. Under these circumstances the doctrine of collateral estoppel applies and is an additional bar to his intervention claim. As in *Younger,* the state trial court, its appellate courts, and ultimately the Supreme Court afford Schwartz an opportunity to raise his constitutional claims. We quote *Younger:* "Here a proceeding was already pending in the state court, affording Harris an opportunity to raise his constitutional claims." 401 U.S. at 49, 91 S.Ct. at 753. So it is with Schwartz.

## III

Although we do not think we need reach the merits, if we were to do so, we are convinced that the district court's finding that the state prosecutor did not have available independent sources of evidence on which to base the indictment was clearly erroneous.

We have examined the state grand jury testimony. Two witnesses appeared, Larry Spohn, the newspaper reporter, and Albert Rolek, the "go-between." Their testimony could not have been derived from Schwartz' immunized grand jury testimony. It was independent evidence. Schwartz' grand jury testimony was not introduced or referred to. Schwartz, by talking to Spohn "for the record," created independent evidence legitimately available to the state prosecutor. The "heavy burden" on the part of the prosecution, as *Kastigar* requires, to prove that "all the evidence it proposes to use was derived from legitimate independent sources" was met. What both the Government and the intervenor are actually seeking is transactional immunity, something that section 6002 abjures.

The injunction issued by the district court is reversed.